UNITED STATES of America, Plaintiff,

v.

Michael CRICHLOW and Michelle O'Donnell, Defendants.

No. 92–CR–193A.

United States District Court, W.D. New York.

Jan. 27, 1993.

Dennis C. Vacco, U.S. Atty., John E. Rogowski, Asst. U.S. Atty., Buffalo, NY, for U.S.

Robert N. Convissar, Buffalo, NY, for defendant Crichlow.

Alan D. Goldstein, Buffalo, NY, for defendant O'Donnell.

## ORDER

ARCARA, District Judge.

This matter was referred to Magistrate Judge Carol E. Heckman, pursuant to 28

U.S.C. § 636(b)(1)(B), for report and recommendation on defendants' motion to suppress evidence. Magistrate Judge Heckman filed a Report and Recommendation on December 23, 1992, denying defendants' motion.

This Court, having carefully reviewed Magistrate Judge Heckman's Report and Recommendation, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed to the Magistrate Judge's Report in the above-captioned matter, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), the Magistrate Judge's Report and Recommendation is accepted in its entirety.

IT IS SO ORDERED.

## APPENDIX

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

Defendants have moved to dismiss evidence obtained by the Government as a result of the stop of the Defendants at the NFTA Bus Terminal on June 11, 1992. This motion was referred to the undersigned for report and recommendation.

A suppression hearing was held on October 29, 1992. Following the hearing, the Defendants requested and were given an opportunity to file additional briefs in support of their motion, with the Government to respond and oral argument to take place on December 2, 1992.

The Defendants waived their right to file additional papers. Their motion was argued before this Court on December 9, 1992. For the reasons set forth below, it is recommended that the motion be denied.

The following constitutes the undersigned's proposed findings of fact and conclusions of law.

## BACKGROUND

The Defendants were indicted on August 28, 1992 in a one-count indictment alleging a violation of Title 21 U.S.C. § 841(a)(1) and Title 18 U.S.C. § 2. The indictment arose out of the stop of the Defendants at the NFTA Bus Terminal at 181 Ellicott Street in Buffalo, New York on June 11, 1992.

Testifying at the suppression hearing was Special Agent Bruce Johnson of the Drug Enforcement Agency ("DEA"). Agent Johnson testified that he regularly observes the arrival of express buses from New York City because it is a source city for narcotics brought into the Western New York area. Agent Johnson also testified that he has made numerous narcotics-related arrests of persons traveling into Buffalo on this particular express bus in the past.

On June 11, 1992 at approximately 6:00 a.m., Agent Johnson observed from the inside glass doors to the NFTA Bus Terminal passengers disembarking from the express bus, including Defendant Crichlow. Johnson saw Crichlow get off the bus carrying a black nylon bag. A few moments later, Johnson watched Defendant O'Donnell step out of the bus and meet with Crichlow. O'Donnell, who was carrying a black purse, walked with Crichlow toward the terminal entrance.

Agent Johnson testified that Crichlow started to open the door, but looked up and saw Johnson, at which point he turned around and walked south along the west wall of the terminal. O'Donnell went with Crichlow. Johnson continued watching the Defendants through the windows of the terminal as they walked around the outside of the building in an apparent effort to avoid a confrontation. As they walked, both Crichlow and O'Donnell turned around to look at Johnson, and Crichlow handed the black nylon bag to O'Donnell. The Defendants continued walking toward the corner of Ellicott and North Division Streets. They then turned left on North Division Street going east around the terminal to the taxi stand. Johnson walked out of the other side of the terminal and approached the Defendants. He was in plain clothes and did not display a weapon. He identified himself as a police officer and asked the Defendants if they could answer a few questions regarding their identity

and the purpose of their travel. The Defendants agreed to this request. Johnson noted that Crichlow began to sweat profusely as they talked.

In response to questions from Johnson, the Defendants stated that they both lived in Buffalo and had traveled together to and from New York City. When questioned as to the length of their stay in New York, O'Donnell replied three days, while Crichlow simultaneously replied a week. During this conversation, Johnson was joined by Officer Fritton. Johnson testified that Crichlow was nervous and sweating, his eyes were darting and he was shuffling on his feet.

At Johnson's request, both Defendants produced identification documents. Crichlow opened O'Donnell's purse, took out a wallet and removed a New York license and a student identification card. Agent Johnson handed this identification to Officer Fritton. Officer Fritton copied down the name and address and handed the identification back to Crichlow.

O'Donnell took a wallet out of her purse and removed two identifications, one of which purported to be a student I.D. from the University of Miami and one of which was a laminated card entitled "Certified Identification." Johnson noted that the student I.D. card lacked the usual student identification number and had poor quality lamination. Johnson, who suspected that the card was not authentic, asked O'Donnell questions regarding the street location of the University of Miami. O'Donnell was unable to answer Johnson's questions.

After hearing the Defendants' conflicting statements, Johnson further identified himself as a narcotics officer, and asked if he could inspect the Defendants' bags. He also advised the Defendants that they were not under arrest, and they were not required to allow the search. O'Donnell opened her purse and Johnson felt around inside. He then asked who the nylon bag belonged to. Crichlow said that "it's hers," referring to O'Donnell. Johnson then asked O'Donnell if he could look inside. She asked him "Am I required"? Johnson indicated that he was merely asking for her permission. Johnson further explained that because of their suspicious behavior, inconsistent answers regarding their travel and the questionable identification card, he had a basis to detain the duffle bag in order to subject it to a test by a drug detection dog. Johnson further informed the Defendants that it would take about 45 minutes to complete the dog sniff and that they were free to leave. Johnson stated that they would be issued a receipt for the duffle bag if they chose not to stay while the dog sniff was being conducted. The Defendants chose to leave and were given a receipt by Johnson for the duffle bag. Prior to leaving, Crichlow retrieved three prescription medicine bottles from the duffle bag.

At approximately 7:10 a.m., U.S. Border Patrol Special Agent Scott VanTyne arrived at the NFTA Terminal with Roscoe, a trained narcotics detection dog. Roscoe was presented with Defendants' duffle bag along with two other bags which did not contain controlled substances. Roscoe positively alerted for the presence of a controlled substance only as to Defendants' bag.

Later that morning, Agent Johnson applied for a search warrant authorizing a search of the Defendants' duffle bag. The search revealed 325.11 grams of cocaine contained in the duffle bag.

## DISCUSSION

The Defendants move to suppress the narcotics seized from the Defendants on the basis that the stop of the Defendants at the bus station was improper. Defendants argue that the law enforcement agents did not have reasonable suspicion supported by articulable facts to support the stop of the Defendants outside of the bus station.

Based on the facts set forth above, the Defendants' motion must be denied. The items seized from Defendants' duffel bag are admissible at trial because their seizure did not violate the Defendants' Fourth Amendment rights.

**382**

■ The initial encounter between Special Agent Johnson and the Defendants was a consensual encounter in which the Defendants agreed to speak with Johnson. As to this type of encounter, the police officer may initiate the contact with an individual without any objective level of suspicion, and the encounter is not a seizure implicating the Fourth Amendment. *See, e.g., United States v. Glover,* 957 F.2d 1004 (2d Cir.1992); *United States v. Hooper,* 935 F.2d 484, 490 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 663, 116 L.Ed.2d 754 (1991);

■ The consensual nature of the encounter changed once Johnson announced his intention to detain the duffle bag for a dog sniff. The detention of Defendants' duffle bag is the type of encounter addressed in the Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It was a limited stop which must be based on "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *U.S. v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry, supra,* 392 U.S. at 30, 88 S.Ct. at 1884).

■ In *United States v. Glover, supra,* the Second Circuit upheld the detention of a person's luggage for a dog sniff based on facts very similar to the case at bar. In *Glover,* the defendant was approached in the Buffalo NFTA Terminal after embarking from an express bus arriving from New York City. The Court credited the DEA Agent's testimony that the express bus was frequented by drug courier's from New York City, a source city for narcotics transported in the Buffalo area. The Court further noted that the Defendant acted in a nervous manner and was sweating profusely during his contact with the officers. When questioned by police, Glover produced questionable identification documents. The Second Circuit held that these factors, when considered together, gave rise to a reasonable suspicion that the defendant was transporting narcotics, thus warranting detention of the defendant and his bag for further investigation (dog sniff). *United States v. Glover, supra,* 957 F.2d at 1010–11.

■ Once the narcotics dog positively alerted for the presence of narcotics in Defendants' duffle bag, Johnson had probable cause to obtain a search warrant. *United States v. Glover, supra,* 957 F.2d at 1013.

■ Furthermore, the statements of the Defendants are admissible at trial because they were not taken in violation of the Defendants' Fifth or Sixth Amendment rights. The encounter between the Defendants and Johnson was non-custodial in nature and the administration of *Miranda* warnings was not required. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). Moreover, in a non-custodial pre-arrest encounter like the case at bar, in the absence of an affirmative request for counsel, there is no Sixth Amendment violation.

### CONCLUSION

For the foregoing reasons, it is recommended that Defendants' motion to suppress should be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

So Ordered.